# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

WILLIAM F. COLLINS, III,       )
                                  )   **Case No. 10 CV 8067**
             **Plaintiff,**    )
    **v.**                       )
                                  )   **Magistrate Judge Young B. Kim**
MICHAEL J. ASTRUE,        )
**Commissioner of Social Security,**  )
                                  )   **December 16, 2011**
             **Defendant.**   )

## MEMORANDUM OPINION and ORDER

William F. Collins, III, applied for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), claiming that his anxiety, panic disorder, and obesity preclude him from working. An administrative law judge ("ALJ") concluded that Collins' impairments are severe but not disabling. The ALJ denied Collins' application for benefits—a decision Collins is challenging in the current motion for summary judgment. For the following reasons, the motion is granted:

### Procedural History

Collins applied for DIB in July 2007 claiming that his disability began on April 27, 2006. (Administrative Record ("A.R.") 168.)[1] The Commissioner denied his claims initially and on reconsideration. (Id. at 70-80.) Collins then requested, and was granted, a hearing

---

[1] Though Collins' application for benefits alleges an onset date of April 27, 2006, (A.R. 168), the ALJ's opinion states an onset date of October 26, 2001, (id. at 19). At a status hearing before this court on December 15, 2011, Collins confirmed that he is claiming an onset date of October 26, 2001.

before an ALJ. (Id. at 81-82.) The ALJ scheduled the hearing for December 21, 2009, but Collins failed to appear. (Id. at 19.) In response to an order to show cause, Collins appeared for a hearing on March 3, 2010. (Id.) The ALJ concluded that Collins had two severe impairments—obesity and an anxiety related disorder—but was not "disabled" as defined by the Social Security Act and denied his claims for DIB. (Id. at 19-29.) When the Appeals Council denied review, (id. at 6-8), the ALJ's decision became the final decision of the Commissioner. *See Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007). Collins then filed the current suit seeking judicial review of the ALJ's decision. *See* 42 U.S.C. § 405(g). The parties have consented to the jurisdiction of this court. *See* 28 U.S.C. § 636(c).

## Facts

Collins worked as a journeyman insulator from 1992 through April 2006, (A.R. 247), when he was laid off from work due to absenteeism caused by his panic attacks, (id. at 52). He claims that it is nearly impossible for him to enter a public place due to his anxiety and agoraphobia. (Id. at 91.) He ventures outside his home for visits to the grocery store at odd hours, when it is least crowded, and even then, has been forced to leave the store on occasion due to panic attacks. (Id. at 57-58.) Collins claims that his anxiety and agoraphobia have destroyed his social life, (id. at 244), interfered with his concentration, (id. at 265, 281), and rendered him unable to work since April 2006, (id. at 168). Collins failed to appear before the ALJ for his initially scheduled hearing because he was overwhelmed by shaking and sweating due to agoraphobia. (Id. at 129-31.) Collins appeared before the ALJ at a

subsequent hearing, where he introduced both documentary and testimonial evidence in support of his claims.

## A.     Medical Evidence

The record reveals that Collins first sought medical help for anxiety and depression from Dr. Paul Panzica on February 21, 2003. (A.R. 332, 373.) At that visit, Collins reported two years marked by anxiety and depression, poor concentration, and a history of anxiety attacks in public, which he described as feeling light-headed, dizzy, and jittery. (Id.) Dr Panzica prescribed Paxil, Inderal, and Xanax to alleviate the symptoms. (Id.) When Collins visited Dr. Panzica a month later, Dr. Panzica noted that with medication Collins was "doing much better" and that the panic, anxiety, and depression were "stable." (Id. at 331.)

Collins returned to Dr. Panzica three months later in June 2003 for a follow-up appointment for his anxiety. (Id. at 330.) Dr. Panzica noted that Collins was "unable to work due to panic," specifically, that Collins had attempted to start a new job but "could not make it thur [sic] [the] front door" despite anxiety medications. (Id.) Dr. Panzica increased Collins' dosage for Inderal and Paxil and remarked that Collins' anxiety, depression, and panic were poorly controlled. (Id.) The next month, Collins saw Dr. Panzica for sharp chest pain, but the cardiac tests were normal, (id. at 386), and the diagnosis was anxiety, (id. at 370).

Four months later, in October 2003, Dr. Panzica noted that Collins' anxiety and panic attacks were adequately controlled and that Collins presented with "no anxiety, no agitation,

no depressed affect." (Id. at 325-26.)  Again, in May 2004, Dr. Panzica indicated that Collins' anxiety and panic were controlled and continued his medication.  (Id. at 324.)  Three months later, Dr. Panzica again remarked that Collins' anxiety was well-controlled on medication.  (Id. at 323.)

However, by December 2005, Collins' symptoms had worsened.  He  returned to Dr. Panzica and complained of panic attacks, depressed mood, and impaired concentration. (Id. at 321.)  Collins smelled of stale alcohol at the visit but his emotional state was assessed as normal. (Id.) Dr. Panzica continued Collins' Paxil prescription and noted that his anxiety and panic were marginally controlled. (Id.)

Collins filed a disability report with an SSA field office in July 2007.  (Id.  at 237-45.) He asserted that his anxiety hampered his concentration and caused him to take numerous sick days, ultimately resulting in termination from employment.  (Id. at 238.)  He also explained that his anxiety had been a barrier to treatment—he had stopped taking his medications because his prescription expired and he "couldn't make it in to see the Dr [sic] because of anxiety." (Id. at 244.)  He mentioned that he could no longer afford the medication and doubted its efficacy.  (Id. at 244.)

Erwin Baukus, Ph.D., a licensed clinical psychologist, evaluated Collins in October 2007.  (Id. at 389-93.)  Collins drove himself to Dr. Baukus' office and remained with him for 1.2 hours.  (Id. at 389.)  Dr. Baukus noted that Collins "had a tremor and his hands were cold with clammy palms," and described Collins' mood as anxious, but stated that

4

"[c]omfortable rapport was established and maintained . . . throughout the examination." (Id. at 389-91.)  Collins indicated that he had ceased taking medication.  (Id. at 390.)  He mentioned that he shopped for his own groceries but "does not get out to visit friends or family and visitors seldom come to see him at his residence."  (Id. at 391.)  Dr. Baukus diagnosed Collins with panic disorder and agoraphobia, which he characterized as "moderate," noting that Collins is "usually able to stay calm enough to shop for groceries (and beer) by going at odd times when he is the only customer in the store."  (Id. at 392-93.)

Following Dr. Baukus' report, SSA medical reviewer Jerrold Heinrich, Ph.D., a psychologist, analyzed Collins' case and assessed his residual functional capacity.  (Id. at 397-414.)  In his November 2007 report, Dr. Heinrich opined that Collins suffered from panic disorder with agoraphobia but that his symptoms did not satisfy the diagnostic criteria of Listing 12.06A, entitled "Anxiety-Related Disorders."  (Id. at 402); *see also* 20 C.F.R. Pt. 404, Sbpt. P, Appendix 1, Listing 12.06.  Regarding the "B" criteria of Listing 12.06, Dr. Heinrich indicated that Collins had a mild restriction of activities of daily living, a moderate difficulty in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation, each of extended duration.  (Id. at 407.)   None of these functional limitations met the "degree of limitation that satisfies the functional criterion" of Listing 12.06B.  (*See* id. at 407.) Dr. Heinrich also opined that the medical evidence did not establish the presence of the 12.06(C) criterion.  (Id. at 408.)  He noted that Collins is able to drive and can go grocery

5

shopping at a relatively empty store, but does not interact with people or socialize. (Id. at 409). Dr. Heinrich's residual functional capacity assessment indicated that he found Collins' "report and presentation [to be] credible," that he "needs a low-stress job," and "lacks the emotional temperament to cope with frequent interactions with others or working among large groups." Lastly, Dr. Heinrich noted that Collins "can not cope with on the job travel." (Id. at 413.) This evaluation was affirmed in April 2008 by a consultant retained by the state disability agency. (Id. at 415-17.)

Collins visited Dr. Panzica again in January 2008 after a two-year break in treatment. At that visit, Collins presented with stomach pain and a "blunted" emotional affect. (Id. at 360.) Dr. Panzica noted that Collins' panic was marginally controlled and prescribed Fluoxetine for panic and Lorazepam for anxiety. (Id. at 361.) That month, Collins informed the SSA that his panic attacks had "become more frequent and have lasted for a longer duration. My ability to concentrate is becoming worse." (Id. at 274.) The next month, Collins informed SSA that his anxiety caused him to become confused during conversations and had caused a panic attack at Dr. Panzica's office. (Id. at 282-89.)

Collins visited Dr. Panzica again in March 2008 for a physical and evaluation for disability benefits. (Id. at 354.) Dr. Panzica noted that Collins was "still severely impaired due to panic and agoraphobia," that he took two tablets of Lorazepam before the visit, and that he presented with an emotionally stable, mildly anxious emotional state. (Id.) Dr. Panzica's treatment notes characterized Collins' agoraphobia as poorly controlled and

his panic as marginally controlled. (Id. at 355.) Dr. Panzica referred to these treatment notes in a March 24, 2008 psychiatric report that he completed for the state disability agency, wherein he diagnosed Collins as suffering from panic and agoraphobia and stated that Collins is "unable to sustain a physical presence in an unfamiliar/public place." (Id. at 346-53.) The following month, Collins informed SSA via a disability report that Lorazepam and Propranolol were reducing his anxiety "a bit." (Id. at 299.)

Collins visited Dr. Clay Canady, an orthopedist, for a concern unrelated to his anxiety during the summer of 2008—a fractured ankle. These visits—and more significantly his failure to visit—are relevant to the extent that they demonstrate Collins' agoraphobia and anxiety. Dr. Canady's treatment notes from July 11, 2008, state that when Collins' cast broke down, Collins ordered cast material online and over-wrapped the cast himself rather than return to Dr. Canady's office for cast repair. (Id. at 444.) Collins canceled four follow-up appointments before returning to Dr. Canady. (Id. at 440.)

The record shows that Collins visited Dr. Panzica two times in February 2009 regarding an abscess. During both visits, Dr. Panzica assessed Collins' panic as marginally controlled. (Id. at 419, 422.) A year later, Dr. Panzica completed a mental impairment questionnaire at the request of Collins' attorney. (Id. at 445-9.) Dr. Panzica opined that Collins' impairments would cause Collins to miss work more than three times a month. (Id. at 447). He indicated that Collins' mental impairments caused extreme restrictions in activities of daily living, extreme difficulties in maintaining social functioning, constant

7

deficiencies in maintaining concentration, persistence, or pace, and continual episodes of deterioration or decompensation in work-like settings. (Id. at 449.)

## B. Collins' Testimony

During the hearing, Collins described a "trend" of losing jobs as a result of absenteeism due to panic attacks. (A.R. 56, 52, 61.) He characterized his panic attacks as causing him to shake and to feel as if he "can't do anything," "can't function," and must go home. (Id. at 49.) He said that he struggled to maintain employment and "lasted as long as they [the employers] would keep me . . . I had to miss time for anxiety . . . and they just couldn't tolerate it." (Id. at 61.) In response to the ALJ's questioning, Collins confirmed that when he worked as an insulator, his work environment involved other tradespeople who performed their own jobs at the worksite. (Id. at 59-60.)

Collins explained that he leaves his home "very, very rare[ly]" and as infrequently as possible. (Id at 61.) At the time of the hearing, he had not been to a bar or restaurant with friends in three to five years, (id. at 51), and was not sure whether he could manage being with more than two friends at a time because he had not been in a social environment "in a long time," (id. at 59). He testified that being around two strangers would trigger a panic attack. (Id.) Collins stated that he leaves his home two or three times a week to go to the grocery store, where he shops for "five or ten minutes at the most." (Id. at 49, 57.) He shops only after midnight or before seven a.m., he testified, because the store is most empty at those times. (Id.) He testified that he had experienced panic attacks at the grocery store

"quite a few times" and has had to leave without paying for his groceries. (Id. at 49-50.) He had not suffered an attack at the grocery store for about two months, he said, because he visited the store only when it is empty and shops quickly. (Id. at 57-58.)

Collins drove himself to the hearing despite feelings of anxiety. (Id. at 56.) He testified that he takes the anxiety medications as prescribed but does not believe that they relieve his symptoms. (Id. at 61.) Rather, he takes medication to prevent the symptoms from getting worse. (Id.)

## C. Vocational Expert's Testimony

The ALJ called Edward Pagella, a vocational expert ("VE"), to provide his opinion of the kinds of jobs Collins could perform assuming certain hypothetical limitations. (A.R. 37.) At the initial hearing, the ALJ asked Pagella to assume a person with Collins' age, education, and work experience and the residual functional capacity to perform the full range of work at every exertional level. (Id.) The ALJ further described the hypothetical person as retaining the mental and behavioral capacity to do simple tasks, and understand, remember, and execute some detailed instructions, and concentrate and persist adequately on tasks within an organized setting. (Id.) The ALJ described the hypothetical person as needing a low-stress job, lacking the emotional temperament to cope with frequent interaction with others or work in large groups, and unable to cope with frequent changes in his environment. (Id. at 37-38.) Pagella considered these limitations and testified that the hypothetical individual would not be able to work as an insulator due to the on-the-job travel

required by that job.  (Id. at 38.)  Pagella stated, however, that the individual could perform other unskilled occupations available in the local economy.  (Id. at 38.)  Collins' attorney then proposed modified hypotheticals to Pagella.  First, she asked him to assume that the person could not tolerate interaction with anyone.  (Id. at 38-39.)  Pagella responded that the person would be unable to work because all occupations require some type of human interaction.  (Id. at 39.)  Secondly, she asked Pagella whether a person could work if he were restricted to working from home.  (Id.)  Again, Pagella responded that no "substantial gainful activity" would be available.  (Id.)  Third, she asked Pagella to consider the effect of missing more than two days of work per month due to difficulty leaving the home.  (Id.)  Again, Pagella responded that no work would be available.  (Id.)  Lastly, she asked Pagella to consider the effect of an individual's being off-task twenty percent of the day due to psychiatric symptoms.  (Id.)  Again, Pagella testified that there would be no work available. (Id.)

At the second hearing, the ALJ and Collins' attorney again posed hypothetical questions to Pagella.  Of the six hypotheticals posed to Pagella at the second hearing, three were not asked at the first hearing, and they are summarized here.  First, the ALJ asked Pagella whether there were any sedentary, low-stress jobs available in the local economy for a person who can execute simple and some detailed instructions, concentrate and persist adequately in an organized setting, manage occasional interaction with others, work among large groups on occasion, and adjust to infrequent, routine changes in environment, but could

not cope with on-the-job travel. (Id. at 64-5.) Pagella testified that the positions of bench packager and hand inspector would be suitable for such a person. (Id. at 65.) The ALJ then asked Pagella to consider all the limitations described in the prior hypothetical except for the sedentary limitation, and also to consider that the person had to work in an isolated environment with very little contact with others. (Id.) Again, Pagella named unskilled occupations that fit those limitations, specifically, hand sorter, office cleaner, and janitor. (Id. at 65-7.) Lastly, the ALJ asked Pagella to consider a person who struggles with constant difficulties in concentrating, resulting in failure to complete tasks in a timely manner. (Id. at 67.) Pagella replied that there would be no work available for that individual. (Id.)

## D.    The ALJ's Decision

After considering the proffered evidence, the ALJ concluded that Collins is not disabled within the meaning of the Social Security Act. (A.R. 19.) To reach that determination, the ALJ applied the standard five-step sequence, *see* 20 C.F.R. § 404.1520(a), which required her to analyze the following:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner], see 20 C.F.R. § 404, Subpt. P, App. 1; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel,* 227 F.3d 863, 868 (7th Cir. 2000) (quoting *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir.1995)). If at step three, the ALJ finds that the claimant has a severe impairment which does not meet the listings, she must "assess and make a finding about [the claimant's]

residual functional capacity based on all the relevant medical and other evidence" before moving to step four. 20 C.F.R. § 404.1520(e). The ALJ then uses the residual functional capacity ("RFC") to determine at steps four and five whether the claimant can return to his past work or to different available work. 20 C.F.R. § 404.1520(e)-(g).

Here, at step one of the analysis, the ALJ determined that Collins had not engaged in substantial gainful activity since October 26, 2001. (A.R. 21.) The ALJ noted that Collins had worked for four months in 2006 but characterized that period as an "unsuccessful work attempt" pursuant to 20 C.F.R. §§ 404.1574(c) and 416.974(c) because Collins was terminated due to absenteeism from his panic attacks. At step two, the ALJ found that Collins suffers from two severe impairments: obesity and an anxiety related disorder. (Id. at 21-22.)

At step three, the ALJ determined that Collins' impairments do not meet or equal the criteria of any of the Commissioner's listings. (Id. at 22-24.) First, regarding Collins' obesity, the ALJ referred to Social Security Ruling 02-1p, which provides that obesity may, in combination with other impairments, meet the requirements of a listing. Social Security Ruling ("SSR") 02-1p, 2000 WL 628049, at * 5. Here, the ALJ found that Collins' obesity in conjunction with anxiety did not meet a listed impairment. (Id. at 22.) Collins does not challenge this finding. The ALJ then turned to Collins' mental impairment, and again found that it did not meet or medically equal the criteria of Listing 12.06, entitled "Anxiety Related Disorders." (Id. at 23-24.) To meet the required level of severity for Listing 12.06, the

claimant must meet the requirements of 12.06(A) and (B), or 12.06 (A) and (C). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Here, the ALJ did not evaluate whether Collins satisfied the criteria of 12.06(A), but she determined that Collins did not satisfy the criteria of 12.06(B) or (C). (A.R. 23-24.) In reaching that conclusion, she assigned "great weight" to the report of the state agency psychological consultant, Dr. Heinrich, in all regards except one: she disagreed with his assessment that Collins had experienced one or two episodes of decompensation. (Id.) Rather, citing Collins' testimony, she concluded that Collins had experienced no episodes of decompensation. (Id.)

The ALJ then concluded that Collins has the RFC to perform a full range of work without any exertional limitations. Regarding nonexertional limitations, the ALJ concluded that Collins

> can understand, remember, and execute some simple, detailed instructions. He can concentrate and persist adequately on tasks within an organized setting, but needs to work in a low stress environment. He can have occasional interactions with others and occasionally work in large groups. He can also adjust to routine changes in his environment so long as they are not too frequent. He cannot cope with on the job travel.

(Id. at 24-25.) The ALJ also concluded that Collins' "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Collins' "statements concerning the intensity, persistence, and limiting effects of those symptoms are not fully credible to the extent that they are inconsistent" with the RFC. (Id. at 25.) The ALJ found Collins' allegations not fully credible because he never saw a mental health professional for treatment, was not consistent in taking his medications, worked multiple times after his

alleged onset date, and testified that he had not had a panic attack for approximately two months. (Id. at 26.) The ALJ's RFC assessment cited some of the medical evidence. The ALJ noted that she gave "significant weight" to the opinion of the state agency psychologist, Dr. Heinrich, stating that it was consistent with the evidence and the opinion of Dr. Baukus, a state consultative psychological examiner. (Id. at 27.) The ALJ gave little weight to the medical assessment provided by Dr. Panzica, Collins' treating physician, for two reasons: the ALJ found the opinion to be unsupported by the evidence, and Dr. Panzica is a family doctor/internist and not a psychiatrist or psychologist. (Id.) She assigned some weight to the reports of Collins' friends and father. (Id.)

At step four the ALJ found that Collins' RFC prevents him from performing his past work as an insulator. (Id. at 28.) Based on the vocational expert's testimony, the ALJ found at step five that Collins could perform the unskilled jobs of hand packer, hand assembler, and hand sorter. (Id. at 29.) The ALJ also noted that Collins could work in an isolated environment with limited contact with others as an office cleaner or janitor, both classified as simple, unskilled jobs. (Id.) Accordingly, the ALJ concluded that Collins is not disabled and denied his application for benefits. (Id.)

**Analysis**

Collins challenges several aspects of the ALJ's decision. First, he contends that the ALJ improperly discounted Dr. Panzica's assessment of his impairments. This mistake led the ALJ, Collins argues, to erroneously find that Collins did not meet or equal the

requirements of Listing 12.06 and to erroneously assess Collins' residual functional capacity. Collins challenges the RFC finding on two additional grounds—that it does not account for Collins' absentee rate and that it is unclear. Lastly, Collins challenges the ALJ's credibility finding.

This court reviews the Commissioner's decision to ensure that it is supported by substantial evidence and free of legal error. *See* 42 U.S.C. § 405(g); *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). This court will not "reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Collins' strongest argument is that the ALJ made numerous reversible errors in assessing his credibility. Because an ALJ is in the best position to evaluate an applicant's credibility, this court reviews the ALJ's credibility determination with deference. *Simila v. Astrue*, 573 F.3d 503, 517 (7th Cir. 2009). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be patently wrong, and deserving of reversal." *Elder v. Astrue,* 529 F.3d 408, 413-14 (7th Cir. 2008) (internal citations and quotations omitted). To evaluate credibility, the ALJ must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or

15

psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record." SSR 96-7p, 1996 WL 374186, at *1.

Collins challenges three of the reasons the ALJ provided for finding his testimony not fully credible. First, the ALJ noted that Collins never sought treatment from a mental health practitioner. (A.R. 26.)[2] Collins argues that the ALJ failed to consider that his agoraphobia caused him to avoid meeting with a mental health practitioner. Indeed, the following record evidence suggests that Collins' agoraphobia caused significant anxiety about visiting the doctor: in August 2007, Collins informed SSA that his anxiety prevented him from visiting Dr. Panzica, his treating physician, to renew his prescriptions (id. at 244); in January 2008, Collins informed SSA that he had a panic attack while visiting Dr. Panzica (id. at 282-89); in March 2008, Collins self-medicated with two tablets of Lorazepam so that he could visit Dr. Panzica (id. at 354); and finally, Collins cancelled four follow-up appointments with his orthopedist for a broken ankle and over-wrapped a failed cast rather than return to that doctor for cast repair, and explained to the orthopedist that his fear of leaving his home precluded physical therapy, (id. at 440, 444). If Collins' mental illness caused him to avoid consulting a mental health professional, then his failure to do so may not be probative of his credibility. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006) ("But mental illness in general . . . may prevent the sufferer from taking her prescribed medicines or otherwise submitting to

---

[2] This court's review of the record shows that in an August 2007 Disability Report to the SSA, Collins stated that he visited Judy Morey, a psychiatrist, three or four times in 2004 for counseling and prescriptions. (A.R. 241.)

treatment. . . . The administrative law judge did not consider this possibility."); *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (rejecting an adverse credibility determination against a mentally ill applicant that was based on the applicant's failure to seek mental health treatment). Moreover, the Commissioner's own regulations state that the ALJ should not "draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering . . . information in the case record, that may explain . . . failure to seek medical treatment." SSR 96-7p, 1996 WL 374186 at *7.

But here, the ALJ did exactly that—she inferred that Collins' agoraphobia is not as severe as alleged because of his failure to consult a mental health practitioner, while failing to consider the evidence that might have explained Collins' reluctance to seek treatment. While "the ALJ need not evaluate in writing every piece of testimony and evidence submitted," the ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning." *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (internal quotations and citations removed).

As Collins argues, the opinion also omits discussion of other salient evidence corroborating his account of his inability to engage in activities of daily living. The ALJ concluded that Collins' "activities of daily living are fully intact," citing his testimony that his panic attacks do not occur often and that he had not experienced one for about two

months before the hearing. (A.R. 28.) What the ALJ may not have considered is that Collins avoids panic attacks by living an almost entirely home-bound, asocial existence. For example, Collins testified that he leaves his home only two or three times a week, and only for five-to-ten minute long visits to the grocery store, where he goes only when it is likely to be empty. (Id. at 49.) Collins has had panic attacks at the store anyhow. (Id. at 50.) It is not evident whether the ALJ considered these details, which provide context to Collins' ability to function outside the home, because they are not included in the opinion. Similarly, the ALJ concluded that Collins' numerous work attempts in 2002, 2003, 2004, and 2006 "suggest [that] his impairment is manageable and not as restricting as alleged," (id. at 27), without explaining how those work attempts—at least one of which she acknowledged failed due to Collins' absenteeism caused by his anxiety, (id.)—show that Collins can hold down a job despite his agoraphobia. Other important evidence of Collins' condition omitted from the opinion is his difficulty in visiting his longstanding physician and his orthopedist, discussed above. Lastly, the ALJ likely did not consider Collins' statement that his condition had become more severe in recent months, which he included in his statement of good cause for failure to appear for his initial hearing. (Id. at 131.) In fact, the opinion states the contrary: "recent evidence suggests very little change in the claimant's psychology." (Id. at 26.) Whether the ALJ considered that Collins suffered a panic attack on his way to his initial hearing is also unknown, as the opinion notes that Collins missed the initial hearing but does not acknowledge that Collins' agoraphobia was the cause. Without mentions of the evidence

summarized here, it is difficult to know whether the ALJ considered it in evaluating Collins' credibility, as is required by SSR 96-7p, 1996 WL 374186 at *7. *See also Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994) (stating that the court "cannot uphold an administrative decision that fails to mention highly pertinent evidence, or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome.").

Moreover, because the ALJ concluded that Collins' "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not fully credible to the extent that they are inconsistent with the . . . residual functional capacity assessment," (A.R. 25-26), *before* she performed the multi-factor assessment directed by SSR 96-7p, this court questions whether the ALJ discounted Collins' credibility simply because his testimony and other evidence did not fit into her view of his RFC. Finding statements that support the RFC credible and disregarding statements that do not "turns the credibility determination process on its head." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787-88 (7th Cir. 2003). In conjunction with the ALJ's failure to mention the salient corroborating evidence of Collins' symptoms, the ALJ's conclusory statement regarding Collins' credibility suggests that the ALJ may not have "evaluated [Collins'] credibility as an initial matter in order to come to a decision on the merits." *Id.* at 788.

The Commissioner defends the ALJ's credibility determination largely by relying on the same incomplete factual allegations discussed by the ALJ. He argues that Collins' ability

to grocery shop two or three times a week is demonstrative of Collins' ability to manage his symptoms. For the reasons discussed above, SSR 96-7 does not permit the ALJ to view Collins' short, well-timed visits to the store in isolation from other evidence supportive of Collins' claims. While this court agrees, as it must, with the Commissioner's argument that the ALJ's credibility finding is entitled to considerable deference, s*ee Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000), it cannot uphold it here where the ALJ may have discounted Collins' credibility simply because his account clashed with her view of his RFC—an issue not addressed by the Commissioner in his brief—which is reversible error.[3]

Turning to Collins' next argument, Collins contends that the ALJ failed to give appropriate weight to Dr. Panzica's opinion that Collins is unable to sustain a physical presence in an unfamiliar or public space. (*See* A.R. 353). A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007) (quotations and citations omitted). The ALJ gave two reasons for giving "little weight" to Dr. Panzica's opinion. First, the ALJ concluded that Dr. Panzica's findings were inconsistent with the rest of the evidence. The

---

[3] Perhaps the ALJ was trying to communicate through her conclusion, that Collins' "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not fully credible to the extent that they are inconsistent with the . . . residual functional capacity assessment," (A.R. 25-26), that her RFC assessment was based only on the testimony she found credible. If so, on remand, the ALJ should avoid the problematic boilerplate language and clarify the testimony she found not credible so that a reviewing court may understand which aspects of Collins' testimony the ALJ rejected.

ALJ found the following evidence contrary to Dr. Panzica's opinion: the ALJ cited Collins' testimony that "he can be around others, but not consistently," (id. at 27), and recent medical records from Dr. Panzica showing that Collins denied having any serious health concerns, (id.). As explained above, the ALJ's characterization of Collins' testimony is unsupported, as it ignores Collins' statements about his nearly complete withdrawal from socialization, (id. at 50), his avoidance of the company of friends, (id. at 59), his history of panic attacks when conversing with neighbors, (id. at 266), and at the grocery store, (id. at 59), his termination from employment due to anxiety-induced absenteeism, (id. at 52), and his testimony that being around two strangers would trigger a panic attack, (see id. at 59). Moreover, the ALJ appears to have ignored Dr. Panzica's repeated observations over a seven-year period of Collins' agoraphobia and anxiety, which he repeatedly characterized as "marginally" or "poorly" controlled in 2008 and 2009. (Id. at 360, 354, 419, 422.) Though this court is not to re-weigh the evidence, the ALJ's repeated failure to acknowledge important evidence of Collins' impairments is significant.

Under the substantial evidence standard, this court must ensure that the ALJ considered the relevant medical evidence and reached a logical conclusion that is supported by the record. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008); *see also Ribaudo v. Barnhart,* 458 F.3d 580, 584 (7th Cir. 2006) ("Although the ALJ is not required to mention every piece of evidence in the record, his failure here to evaluate any of the evidence that potentially supported Ribaudo's claim does not provide much assurance that he adequately

considered Ribaudo's case") (internal citations omitted). The Commissioner defends the ALJ's rejection of Dr. Panzica's opinion on the ground that his treatment notes contain scant mental examination findings to support his opinion. This rationale, however, was not provided by the ALJ, and therefore cannot be offered here. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010.)

Collins also challenges the ALJ's second reason for assigning Dr. Panzica's opinion little weight—that his specialities in internal and family medicine do not qualify him to render an opinion about the limitations of Collins' mental impairment. As the Commissioner argues, 20 C.F.R. § 404.1527(d)(5) provides that the ALJ will "generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." That section also directs the ALJ, however, to consider a multitude of other factors when weighing conflicting medical evidence, none of which were discussed by the ALJ here. On remand, the ALJ should address those factors to determine the appropriate weight to assign Dr. Panzica's opinion, if controlling weight is not appropriate. *See Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("A treating doctor's opinion receives controlling weight if it is 'well-supported' and 'not inconsistent with the other substantial evidence' in the record,") (citing and quoting 20 C.F.R. § 404.1527(d)(2)); *see also Martinez v. Astrue,* 630 F.3d 693, 698 (7th Cir. 2011) ("An ALJ must give good reasons for not giving the well-supported opinion of a treating physician controlling weight.").

Less persuasive is Collins' next argument that the ALJ erred in finding that he did not meet or equal the requirements of Listing 12.06, entitled "Anxiety Related Disorders." Collins argues that because the ALJ failed to assess whether Collins satisfied the 12.06(A) criteria, her analysis is insufficiently thorough to withstand review. To meet the required level of severity for Listing 12.06, the claimant must meet the requirements of both 12.06(A) and (B), or both 12.06 (A) and (C). *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. In this case, the ALJ did not evaluate whether Collins satisfied the criteria of 12.06(A), but she determined that Collins did not satisfy the criteria of 12.06(B) or (C). (A.R. 23-24.) Collins contends that the ALJ's entire Listing analysis is erroneous because the ALJ did not evaluate whether Collins satisfied the criteria of 12.06(A). In support, Collins cites *Ribaudo v. Barnhart*, 458 F.3d 350 (7th Cir. 2006), where the Seventh Circuit found wanting an ALJ's two-sentence analysis of a claimant's ability to meet a listing. Collins also cites *Brindisi*, 315 F.3d at 786, another case remanded because the ALJ's analysis "omit[ted] any discussion of [the claimant's] impairments in conjunction with the listings, [thereby] frustrating any attempt at judicial review." The Commissioner argues, and this court agrees, that the ALJ's opinion in this case is not comparable to either *Ribaudo* or *Brindisi* because the ALJ provided a detailed analysis of the 12.06(B) and (C) criteria and, in doing so, evaluated Collins' testimony, statements from his friends, and the reports of consultative examiners. (A.R. 23-24.)

Moving to Collins' next challenge to the ALJ's analysis of whether his condition meets or equals Listing 12.06, Collins argues that the ALJ's failure to address the 12.06(A) criteria is reversible error because the (A) criteria impact the assessment of the (B) and (C) criteria. (R. 27, Pl.'s Mem. at 12). In Collins' view, had the ALJ assessed the 12.06(A) criteria, she would have concluded that Dr. Baukus, the consulting psychologist, opined that Collins met the requirements of 12.06(A). Here, Collins overstates Dr. Baukus' opinion. Though Dr. Baukus did observe that Collins had a tremor and cold, clammy palms, (id. at 389), coupled with an anxious mood, (id. at 391), Dr. Baukus did not opine that Collins demonstrated the 12.06(A) criteria—motor tension, autonomic hyperactivity, apprehensive expectation, vigilance and scanning, recurrent severe panic attacks, and a severe difficulty when attempting to function outside the home. Rather, Dr. Baukus noted that Collins *reported* those symptoms. (Id. at 390.) Though the ALJ's failure to assess the 12.06(A) criteria is not reversible error, they should be considered on remand.

Collins further attacks the ALJ's evaluation of Listing 12.06(C) on the ground that she substituted her view for that of the non-examining psychologist and the treating physician, leaving the opinion unsupported by any evidence. As Collins notes, Dr. Heinrich had opined that Collins had experienced one or two episodes of decompensation, each of extended duration, (A.R. 407), but the ALJ disagreed with that opinion because Collins has no history of psychiatric hospitalizations and because Collins testified that he does not leave the grocery store often due to panic attacks, (id. at 24). Dr. Panzica also had opined that Collins

experienced "continual" episodes of decompensation in "work or work-like settings." (Id. at 449.)  The ALJ's characterization of Collins' testimony is concerning, as discussed above, because it describes Collins' grocery shopping out of context, and in so doing, mischaracterizes it.  Notably, the ALJ does not appear to have considered Collins' repeated demonstrations of decompensation, such as his panic attack before his initial hearing, (id. at 131), his January 2008 Disability Report claiming increased frequency of panic attacks, (id. at 273), his panic attack at Dr. Panzica's office in February 2008, (id. at 281), and his testimony that he was terminated from past employment due to absenteeism stemming from panic attacks, (id. at 52, 56).  Because the ALJ did not indicate whether she considered the evidence supportive of Collins' claim, her assessment regarding decompensation does not withstand review.  *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 2005).

The Commissioner argues that the ALJ's rejection of all the medical evidence regarding decompensation is harmless error.  In his view,  even if the ALJ had assigned controlling weight to Dr. Heinrich's opinion regarding decompensation, Collins still would not have met Listing 12.06(C) because it requires repeated episodes of decompensation, not just the "one or two" that Dr. Heinrich found Collins to have suffered.  *See* 20 C.F.R. Pt. 404, Sbpt. P. Appendix 1, Listing 12.06.  While this court acknowledges that the Commissioner is factually correct on this point, it is possible that the ALJ might make a different finding on decompensation on remand, if she determines that Dr. Panzica's opinion is worthy of more weight or if she finds Collins' statements more credible.

25

Turning to Collins' last developed argument, Collins argues that the ALJ wrongfully excluded consideration of his difficulties in attending work regularly in her hypothetical questions to the vocational expert and in the residual functional capacity findings. Collins again points to Dr. Baukus' report as a basis for that limitation; he noted that Collins reported severe panic attacks occurring on the average of at least once a week. (A.R. 390). Whether this limitation is incorporated in the hypothetical and RFC is crucial to Collins' claim because the vocational expert testified that an individual who misses two or more days of work per month is unemployable. *See* A.R. at 39, 68. While 20 C.F.R § 404.1545(a) requires the RFC and hypothetical to account for all of the claimant's medically determinable impairments, *see Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004), the ALJ must incorporate the limitations only if they are supported by the evidence, *see Haynes v. Barnhart*, 416 F.3d 621, 630 (7th Cir. 2005). On remand, after the ALJ reassesses Collins' credibility and other record evidence, she should determine whether to incorporate Collins' claimed difficulty in maintaining regular attendance into the RFC.

Lastly, Collins briefly challenges the ALJ's RFC finding as unclear because it limited Collins to "simple, detailed instructions," two terms that Collins claims are contradictory. The Commissioner argues that the jobs identified by the vocational expert are all unskilled jobs, and, indeed, the vocational expert so testified, (A.R. 65, 67), so this error is harmless.

## Conclusion

For the foregoing reasons, Collins' motion for summary judgment is granted and the case is remanded for further proceedings consistent with this opinion.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**